Let me turn to the next case on our calendar Solzer Mixpac versus A and N Trading. Good morning your honors and may it please the court I'm Josh Katz and I represent the appellants in this. The district court's functionality analysis is irreconcilable with the Supreme could fill an encyclopedia. So let me talk. I have the Mixpac tips here. Is it true that the yellow Mixpac, this is I think yours, the A and N one, attaches to something that's also yellow? Is that right? Yes, so there it attaches to a cartridge with two cylinders. Right, I see the two cylinders. They go right in there. Okay, so what is it that's in the yellow thing that attaches to this? That's the cement? Yes, a light body impression material. So it's a specific viscosity which is better for some procedures and not used. Who makes that? They're called the materials manufacturers and it's and do they always make the yellow one with this diameter? Yes. So that if you say give me a yellow Mixpac when you're in the dental office you will get the same material and the same amount of material coming out of the I guess the business end of the gun. Right, it so it corresponds with the diameter. So yellow is 4.2 millimeters and in fact if you look at the and does everyone in the industry know that? Yes. Everyone knows that yellow is 4.2? Yes. That was not what that's not what Judge Kaplan found. Judge Kaplan specifically said otherwise on page 858 and 59 he said that the defendant has labored mightily to establish that everyone in the dental world regards the color as a proxy for diameter and he rejected that and credited Dr. Glazer's testimony. So he had a trial about that. Certainly and well first of all if you look at the 3M instructions for use which are in the record it tells the dentist use the yellow tip. It doesn't say use the 4.2 millimeter. It specifically says yellow and what I would say in response to the to the to the trial issues we don't need to prove that everyone in the industry associates yellow with a particular diameter. What we need to show is that the the color coding system is functional under the traffics test. One prong of which is whether it improves quality meaning it makes the product easier to use. That is undisputed. It's in MixPak's affidavits that the color coding makes it easier to handle and makes it quicker because you can just grab the yellow and you know it goes with the yellow. It's in their advertising where they advertise to dentists that this new color coding system will make it easier to use and I believe the district court also acknowledged it when he said that there is a degree of functionality here albeit a small one. Counsel I think I'm looking at the at the representations you're talking about and I'm looking at the declaration of Mr. Wilson says that six colors are used the colors of the cartridge cap are matched to the mixing tip to indicate the proper size and mixing ratio but I don't think that means that the cartridge cap is the same color. In other words if the mixing tip is yellow it may match to the cartridge cap if the cartridge cap is 4.2 millimeters but I don't I does that mean that the cartridge cap has a has something yellow on it? I believe in many instances it does there are cartridges that do not have something yellow on it. You mean the cartridges that contain the material the impression material that is forced through these tips? Correct. They're manufactured by someone other than the parties here a 3m for instance right? The the materials inside the cartridge are manufactured by 3m the system which consists of the tips the cartridge and the gun is manufactured by isn't the cartridge the material that is forced through the gun? The cartridge contains the two is it the cartridge the cartridges are manufactured by the parties each party each party they manufacture the cartridge they don't manufacture the material inside the cartridge so they they fill the the empty cartridges are filled by 3m and others yes yes they're they're they bundle the products and the cartridges are designed to go with the tips oh allegedly that's the argument and yes they're they're color-coded that makes it functional yes they are color-coded to make it easier to use that that is the testimony that's undisputed in this case and and is it true that amn also uses a yellow tip with a cartridge that has a yellow coating on it? I understand it does manufacture a cartridge with the yellow coating on it but when you buy if that excuse me but if that is so and if your client manufactures both a as um as as the plaintiff uh there's there's a there's a few reasons and let me first of all there's there's an after market for the specific mix pack tips because what happens is you use the cartridge and you have stuff left over and then you need to go get new tips for the next patient my client needs to be able to sell tips that correspond with the mix pack colors in order to compete in that after specifically for the mix pack. I thought you said that the tips are sold together with a cartridge that feeds the stuff through the gun right but they may not use up the entire cartridge with each patient right and they have four cartridges left and they need a new tip I understand that much right so it's it's essential to just competing in that in that aftermarket for the tips the other problem is mix pack claims at least six colors which is almost everything on the spectrum except red if my client goes out and finds six unique colors and then the next competitor in the market goes out and takes six unique colors we're going to run out very fast it's not feasible for everything excuse me but I don't think that's the point the point is not that you have to find new colors on on the spectrum the question is why you have to use yellow for that particular size of 4.2 rather than green if you're going to manufacture both the tip and the cartridge and you can both their colors for these particular sizes your honor because well for one for one reason there's there's the aftermarket that I that I just mentioned earlier but other other than the aftermarket because I really don't think this case is is about used used tips your honor it's it's it is an important aftermarket I I if you look and the in the record and we cite this sort of brief the industry generally refers to these tips by color and even and this is even admitted don't we have a finding that the finding of fact by the trial judge that that isn't so yes we do well I mean what what do you suggest I do in order to find out whether the industry is referring to tips by color I can't do anything I have a finding why is it why is it clearly erroneous well the specific finding is that some people in the industry do but not everyone right and so that is a segment of those that proportion of the market that judge capital identified is a segment in which we ought what proportion would that be what what proof really what proportion we're talking about you're not suggesting that if if one person uh you know uses the color as a reference that would be sufficient right what what evidence did you put before him I said the proportion of the market it's it's the evidence cited we didn't get into a market survey and the judge Kaplan didn't get specific he just said it wouldn't I assume that there are some small fraction of dentists that do in fact associate the color with the size and refer to it that way and so there's a degree of functionality but it's not particularly great and so just what proof what proof did you put before him on this issue that's my question sure uh well for example there's the Henry Schein catalog which refers to the products by just by color if you you turn to the catalog you look at it says here's the yellow tips and there's the diameter which is the diameter of the yellow tips and in some case is it universal that every yellow tip would be the diameter the 4.2 that you told us yes in some cases they say the diameter because everyone knows yellow is for the light body material wasn't there evidence I'm sorry wasn't there evidence that other companies in the industry were using different colors if what you're suggesting is true how come there are other companies that are out there using different colors there really was not such evidence one so one of the supposed one of the companies that was supposedly not using the colors sells a clear tip but the bag that it comes in says yellow on it and compatible with mix packs 4.2 millimeter yellow so I mean just and there and by the way they're suing that company even though they held them out as an alternative design so companies they don't want to get sued by mix pack which is very litigious and they're trying to find ways not to get sued but people are using yellow the other the other one that doesn't use color was a universal tip by Colty that means it's it's for all sizes excuse me but but if if a dentist wants to pick a tip the dentist is not picking the bag the dentist is picking the tip and those tips are clear and they don't have any color on them I do not believe that tips are ever sold individually they come in bags so they're always in bags all right we have lots of questions obviously but let's move on you have time for rebuttal I don't have my list in front of me you've reserved how much two minutes your honor let's hear from next time it's tip good morning counsel thank you judge puller may it please the court I'm Michael wrong so far it is music to my ears to hear judges interested in dental mixing tips because don't over don't overestimate it and we appreciate your your sincere interest I spent a lot of time with these tips listen listen you've never lived unless you've gone to the New York dental show to see all these products display it sounds like it's a great event to do next year I expect to impress my dentist absolutely I think just a few minutes just about the products would be helpful and I is essentially a color palette that they make available to their customers so they make these colored mixing tips they make these caps that go on the cartridges but they sell them empty because mix pack is is a plastics manufacturer essentially highly engineered high quality only from Switzerland but they don't fill these cartridges with the magic dental material that's produced by 3m and the others and so those customers buy from mix pack with the preferences that they ask for so they'll say hey give me I want to make my products interesting and distinctive and I love your quality and your color brands I will buy these colors and I will put my magic material in them and then I will then sell them to my customers now one of the benefits of the system they could choose to match that for example the yellow mixing tip which goes on the cartridge which may have a yellow cap but it may not and that's their choice and in fact the one of the parties that's mentioned in the case this seal global they sell a mixing tip that doesn't match the cartridge on the cap so that's their choice but but the key thing is that the colors are a brand that they are offered to the material manufacturers who have complete uh discretion to package and display and distribute however way they want to may I ask you this I you're very lucid but I can't get straight whether whether the the colored tip has the same color as something on the cartridge it may or may not that is the choice of the material manufacturer how they put together their product and sell and and the way this typically happens there is the initial sale market with the cartridge and the material and then there is the replacement market but there's an important distinction here so for 3m for example when they sell an impression material and it has the material in the cartridge and then they include with that the mixing tips of the color that they decide they want to give to their customers with that box 3m includes mixing tips when they sell the material that's in the cartridge exactly that's where I was going so what they will do then for example let me ask one question to make this clear so that the purchasers of the mixing tips are the material manufacturers not the dentists initially yes because mix pack does not sell directly to dentists they sell to the material manufacturers they do not sell to the end user directly they sell to 3m 3m will then add their material to a cartridge they will then package in a box a kit the material with the mixing tips of the colors that they choose and they distribute and what happens on a practical level is that oftentimes if a dentist is real careful and doesn't waste the material they might have half a cartridge left after the first five mixing tips now we're talking about the replacement market but but the key thing there and as the testimony in in the case was credited by Judge Kaplan the the dentist who is careful follows the instructions of the manufacturer and said if they need five more mixing tips it's about the material it's not the color of the mixing tip that's important and it's not how they choose they go back to the distributor and say listen I have 3ms material what are the right mixing tips that I should use for those give me 10 more that's the way the market should work and does work let me ask you this does the dentist decide the diameter that he or she wants uh who what is the relevance of the diameter and therefore the color yeah there there is no direct correlation between the colors and diameter some of the mixing tips uh have a consistent diameter but diameter is is a red herring it's only one of several criteria that are yellow a yellow herring yellow herring exactly so and again the testimony that and the findings of the court were that dentists don't pick mixing tips because there's too many variables they would get it wrong and there would be a dangerous or or poor procedure so surely surely what you're saying is contradicting declarations in the record Mr. Wilson said that to assist in identifying Wixpax product and to enable users to quickly select a mixing tip that matches the proper cartridge we use the color coding system and and Mr. and and Armin Hagelin says that uh they use that you use the color code to enable the an end user dentist to quickly identify the appropriate tip that is matched to the same color cartridge cap and my question is why is that not a functional characteristic which is indicative of quality because first of all those were statements from many years ago uh which do not reflect today's market well they they they're from many years ago so they they they don't reflect your position in litigation but uh that's a fact but but the point is that uh this was the design of the system in the event that the manufacturers wanted to use such a system and match the cartridge to the to the mixing tip that was an option available to them but that is not an industry standard and the court found there is no industry standard about the colors or what their meaning is other than they are a brand and a very valuable brand that indicates swiss origin and high quality he said there was a moderate a little functionality he says well mr katz took some liberties with that quote the judge's quote most important of all with respect to functionality is the fact that the user that alternative designs are obviously and clearly available without impairing the utility of the product so that's what he said about functionality right the the court said the degree of functionality is small so i i i think the court was acknowledging that there was evidence and the defendants tried mightily as the court mentioned to prove that the colors indicated a certain size and that that size had a meaning in the marketplace but the court found otherwise but what about the argument that the district court applied the wrong test on the functionality that it applied the fabrication enterprise framework rather than how uh has set out what the test should be right and and so the hook to get to that legal argument was essentially taking liberties on judge uh the judge's quote the judge said uh the degree of functionality is small but they quote and said the degree there is a degree of functionality that was found and so their theory is therefore the court considered and found functionality in the first sense but then excused it later after looking at the alternatives available in the market i think their argument might be that the judge didn't look at like for example the quality issue that judge jacobs referred to that the court kind of missed that because it didn't apply the lubaton framework so is that possible or not first of all quality was not actively litigated but the court found specifically that quality that again stepping back a trademark should not be the best or cheapest way of producing a product so we said in lubaton if it constitutes an improvement on the uh and the quality on in this case it would have to be an improvement on the operation of the mixing tips so right did judge caplan say i find this would not be an improvement on the operation of the mixing tips did he did he focus on that he he did consider and he heard testimony and he credited the testimony that the mixing tips do not work any better or differently whether they have color or not because many of them do not and uh there was a testimony from uh the witness uh two witnesses in fact on this very point uh but the court made uh more of a of a finding specifically about quality from the bench but it was not a direct finding on quality simply because it had not been disputed let me ask you this the um you you're saying that that these statements are outdated and that and that dentists are not using the colors to match the tip to the cartridge then i understand then you're saying that the purpose of the of the colors is uh is to identify uh your client's product but what's what's the purpose of this for the for the dentist it's keep the dentist from getting bored i've been using the green tips all morning now i'd like to go on to to the blue ones it's hard to imagine dentists uh giggling as as they're applying these materials and having such a great time but yes it is that was the intent of the product they were deliberately candy colors they were uh designed to be colorful and fanciful and so that it does if that brightens up the dentist day mix pack is happy uh back to the quality point i apologize i didn't have the quote earlier uh quality again was was considered by the court and uh the testimony showed that uh that adding the colors to the mixing tip in the manufacturing process can actually hurt quality so it's not an improvement of the quality of the product it actually uh can hurt uh the quality control mr yutzi testified uh that's a joint appendix 582 26 to 29 he testified that uh quality control can be harmed by adding the colors where it can actually mess up the molding process and also testified that the colors did not improve the function of or mixing of do they have do the colors correspond to a size of the aperture through which this stuff flows yes i think we've heard yes that yellow is 4.2 mr katz testified to that but that was not the finding of the court the court found tell me the finding of the court was the court found that there was no that the the theory that uh color that color is corresponds with the size was wrong and in fact the defendant's expert that was the the essence of his testimony he had done a survey of the marketplace he had examined all kinds of products available and he had concluded that the color did equal size and he admitted he was wrong that he didn't and uh that that and his testimony was given uh no weight by judge kaplan after observing his testimony and his evidence was that who was that which witness are you talking about dr cisneros was the expert witness so the only purpose of the colors is to identify your product and to and to and entertain the dentist i i shouldn't speak for the entertaining aspect but well i mean uh you know my but but but in but they were fanciful arbitrary colors when selected there was no reason why you know one was brown one was pink one was blue uh they the colors were selected to be attractive and eye-catching and that and the court found that that uh after listening to the testimony about the origin and reasons for selecting the mixing tips that that was that the products were not functional for their colors well thank you very much mr ketchum retain two minutes for rebuttal thank you your honor and just picking up on that last point on whether the size corresponds with color the testimony by mixpac's own witness and this is at page 720 to 21 of the joint appendix was that it has never manufactured a yellow mixing tip anything other than a 4.2 millimeter diameter this is a company that has been making this product for more than 20 years and has a hundred percent market share and they have never made yellow at any other size that's not a coincidence that's because color corresponds to diameter which what does what does what does the difference in diameter do in terms of the functionality of of of the whole um uh structure right so different diameters are better for different types of materials so is that the speed with which the the stuff comes out i don't think it affects the speed i know that it has to do with the viscosity of the material and certain like a lighter viscosity is better for certain sort of procedures and then there's a medium viscosity for others and and the size corresponds to the viscosity so a lighter viscosity you want a smaller diameter and for the heavier stuff you want a bigger diameter and that's why and that's why for example when you look at the 3m you know instructions they package with their product they say for light body material use the yellow tip and they need to say use a 4.2 diameter they don't need to because yellow is 4.2 and everyone knows everyone in the industry every dentist who reads those instructions would know what a yellow tip means i would think so i is there some dentist somewhere who doesn't probably but i mean that's not what we have to prove that every single person in the industry does that we just need to prove that these are colored who said you're you're dr the expert cisneros um across examination conceded that this is not the case what's your response to that he conceded nothing of the sort there's no testimony to that effect what what happened was at his deposition they meaning the examining attorney produced some new tips that he had never seen before that apparently were were clear and he said well if these are i've never seen these before in the i've never heard of these but if these are really out there it must mean that not every tip is yellow which may or may not be true we don't know about these tips we don't know if they've ever sold them at every 4.2 tip right but right but i mean more fundamentally it just doesn't matter even if there were even if there were two different color codes you know there's the mixed back color code and then some other company had their own totally different color code neither party would be allowed to monopolize that particular color code the color coding makes it easier to use the tips that's the testimony i'm this is a very new development that we're supposed to not credit mixed packs declarations because they're out of date i it wasn't raised in the in the in the brief on appeal it wasn't argued below and i thought the thrust of their arguments was that you should assume the district court credited everything they said so this is murphy mr murphy said that quality was not actively litigated in the trial that's not true at all it was it was if you just look at the post-trial briefs in our post-fighting it was litigated extensively it was it was we briefed it at length we also briefed it briefed at pre-trial and we clearly pointed out that these are color coded and the color coding is makes it easier to use them and that makes it functional correct correct if the color coding um makes it easier to use them it's a functional feature and therefore not protectable that's absolutely correct that that is the syllogism that is enough to resolve every claim that at least every claim that the district court addressed the contempt thing is a different it's a different animal uh you know i wanted to just pick up but that but that would run counter to a finding of fact made by the district judge i don't know there was no finding that it the district court didn't say i've reviewed the hegelin declaration and the wilson declaration and i'm declining to credit them there was no finding on this regard the district court what about crediting dr glazer's testimony he said specifically i find dr glaze to be quite persuasive incredible that the degree of functionality here is small isn't that essentially saying that he chose which expert he believed right rejected dr sure but but dr glazer doesn't say that the color coding does not he doesn't say they're not color coded and he doesn't say that color coding doesn't improve quality under the traffic's test i mean his testimony just doesn't speak to that issue so so to credit him he testified that dentists consider color is not the only thing we care about which fine i'm sure that's true i'm sure that's true of every single product but it doesn't resolve the functionality issue and i see i'm a bit past my time if i could just leave you with one final thought anytime when you're trying to decide this case and you are tempted to say this color coding system is not functional because of x just ask whether x would also be true of the traffic design in traffics and if it is that can't be the right mode of analysis for determining functionality you mean red yellow and green i beg your pardon i don't understand the question you mean in the traffic light red yellow and green i'm sorry that's a good point actually you wouldn't tell someone you can't make traffic lights where red means stop yellow means slow down and green means go because they're you know anyone could just do their own system there is a value to uniformity here and so i think your honor's point about the traffic light is a good one thank you counsel thank you very interesting argument we'll reserve decision